## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT WECHSLER,<br><br>    Plaintiff,<br><br>v.<br><br>TRANS UNION LLC; HYUNDAI CAPITAL AMERICA, dba HYUNDAI MOTOR FINANCE and CONSTAR FINANCIAL SERVICES LLC,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1) **FCRA, 15 U.S.C. § 1681** *et seq.*<br>2) **FDCPA, 15 U.S.C. § 1692** *et seq.*<br>3) **FCEUA, 73 Pa. Stat. § 2270** *et seq.*<br>4) **UTPCPL, 73 Pa. Stat. § 201-1** *et seq.* |

Plaintiff Scott Wechsler ("Plaintiff" or "Mr. Wechsler"), by and through the undersigned counsel, and hereby brings this Complaint and Demand for Jury Trial ("Complaint") against Defendants Trans Union LLC ("Trans Union"), Hyundai Capital America dba Hyundai Auto Finance ("Hyundai"), and Constar Financial Services LLC ("Constar") (referenced collectively as "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Fair Credit Extension Uniformity Act, 73 Pa. Stat. § 2270 *et seq.*; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1 *et seq.*

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges

violations of federal laws: 28 U.S.C. § 1681 and 15 U.S.C. § 1692. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as Plaintiff's claims all derive from a common nucleus of operative fact such that they form the same case and controversy.

2.   Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3.   Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at the District, such that personal jurisdiction is established.

## PARTIES

4.   Plaintiff, Scott Wechsler, is a natural person who resides in Richboro, Pennsylvania. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c); 15 U.S.C. § 1692a(3); and 73 Pa. Stat. § 2270.3.

5.   Defendant Trans Union maintains a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

6.   Defendant Trans Union regularly assembles and evaluates consumer information to sell to third parties. Therefore, Defendant Trans Union is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

7.   Defendant Hyundai Capital America is an automobile company incorporated in California. Its principal place of business is located at 3161 Michelson Drive, Suite 1900 Irvine, California 92612. Hyundai Capital America regularly engages in the extension and

COMPLAINT AND DEMAND FOR JURY TRIAL

financing of auto loans through its subsidiary, Hyundai Motor Finance. Therefore, Defendant Hyundai is a "creditor" as the term is defined in 73 Pa. Stat. § 2270.3.

8.  Defendant Hyundai regularly furnishes consumer credit information to credit reporting agencies. Therefore, Defendant Hyundai is a "furnisher" of consumer credit information as that term is contemplated by 15 U.S.C. § 1681s-2 of the FCRA.

9.  Defendant Constar is regularly engaged in the business of debt collection. Defendant Constar can be served through its statutory agent, Corporation Service Company, located at 8825 N. 23rd Avenue, Suite 100 Phoenix, Arizona 85021.

10. Defendant Constar is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6); 73 Pa. Stat. § 2270.3.

11. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

12. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

13. On September 21, 2015, Plaintiff entered into a lease agreement with Defendant Hyundai.

14.  Under the terms of the lease agreement, Plaintiff agreed to lease a Hyundai Genesis for 36 months, with a monthly payment of $545 per month.

15.  Plaintiff's lease was to expire on September 21, 2018.

16. On October 11, 2018, Plaintiff entered into a month-to-month Lease Extension Agreement by which he agreed to continue to make the same lease payments by the 21st of every month.

17. The Lease Extension Agreement allowed Plaintiff to keep the Vehicle and make monthly payments for up to six additional months. However, the Lease Extension Agreement also permitted Plaintiff to return the Vehicle any time before the end of the extended period without penalty for "early termination."

18. Between September 11, 2018, and December 21, 2018, Plaintiff made timely, regular payments on his Hyundai Account, No. 1513226359 (the "Account").

19. On December 21, 2018, Plaintiff returned the Vehicle to Hyundai, effectively terminating his lease (as permitted by the agreement).

20. More than one year later, on or about January 22, 2020, Plaintiff received a statement that indicated he owed Defendant Hyundai $1,264.40. The allegedly remaining balance included the following:

- Due and Unpaid Lease Payments ($545.00);

- Excess Wear and Use ($260.00);

- Disposition Fee ($400.00);

- Official Fees and Taxes ($59.40).

21. Plaintiff was confused by the bill, as he returned the Vehicle on December 21, 2018, and made his last payment on November 16, 2018. Plaintiff did not believe he owed the $545 Hyundai attributed to a "Due and Unpaid Lease Payment." Therefore, Plaintiff

assumed it was a mistake and did not remit payment for that portion of the balance.

22. However, Plaintiff did pay Defendant Hyundai $719.40 to cover the charges attributed to Excess Wear and Use, the Disposition Fee, and Official Fees and Taxes.

23. On or about April 27, 2020, Plaintiff received another letter from Defendant Hyundai that stated he still owed $545.00 on the Account.

24. Shortly thereafter, Plaintiff contacted Defendant Hyundai to inquire about the remaining balance, which Hyundai had attributed to "Due and Unpaid Lease Payments."

25. When Plaintiff spoke to a Hyundai representative, the representative told him that Hyundai's records indicated that plaintiff returned the Vehicle sometime in January 2019.

26. Thankfully, Plaintiff had retained the Lease Return documentation that proved he returned the Vehicle on December 21, 2018.

27. When Plaintiff provided the Lease Return documentation to Defendant Hyundai, its representative told Plaintiff that he had allegedly returned the Vehicle one day late, which triggered an additional monthly payment of $545.00.

28. In the months that followed, Plaintiff communicated with Hyundai regularly regarding the erroneous Account balance.

29. In or around September 2020, Plaintiff applied to lease a vehicle through Gateway Kia. At the time, Plaintiff believed he had nearly perfect credit.

30. When Kia pulled his credit reports, Plaintiff learned that the three major consumer reporting agencies, Defendant Trans Union and non-parties Equifax and Experian, were reporting the Hyundai Account with a past due balance.

COMPLAINT AND DEMAND FOR JURY TRIAL

31. Initially, the Kia representative told Plaintiff that he would not be able to lease the vehicle he selected.

32. Plaintiff was embarrassed and frustrated by the erroneous information. Plaintiff was only able to lease a vehicle after explaining the foregoing facts to the Kia representative, who then called Hyundai to verify the information.

33. Upon information and belief, the Hyundai representative told the Kia representative indicated that the three consumer reporting agencies were inaccurately reporting Plaintiff's Hyundai Account.

34. In the months that followed, Plaintiff continued to communicate with Hyundai regarding the Account to no avail. Although Hyundai could not explain why Plaintiff had an outstanding balance, it insisted he did.

35. Toward the end of 2020, Plaintiff lodged a Complaint with the Bureau of Consumer Protection in Pennsylvania.

36. Upon information and belief, the Office of the Attorney General forwarded Plaintiff's Complaint to Defendant Hyundai sometime in December 2020 or January 2021.

37.  On or about January 22, 2021, Defendant Hyundai responded to the Office of the Attorney General.

38. In its letter, Defendant Hyundai alleged that Plaintiff returned the leased vehicle on January 1, 2019, which is why he owed an additional month's payment.

39. Not only does that assertion conflict with the Lease Return documents that Defendant Hyundai **provided** to the Attorney General alongside its letter, but it also

conflicts with the Hyundai representative's earlier statement that Plaintiff had allegedly returned the Vehicle "one day late" (e.g. on December 22, 2018).

40.  Yet despite proof of the contrary, Hyundai's letter to the Attorney General insisted that its records reflected that Plaintiff owed an outstanding balance. Further, Hyundai indicated that the credit reporting agencies were accurately reporting the Account.

41. At the time of this Complaint's filing, Plaintiff and his wife have been looking for a mortgage company for more than six months.

42. Plaintiff applied for a mortgage with TBI Mortgage on or about January 28, 2021. Upon information and belief, TBI Mortgage offered Plaintiff a mortgage with less favorable terms because of the inaccurate Account included in his credit reports.

43. Upon information and belief, Equifax, Experian, and Trans Union all provided TBI Mortgage/CredCo with information regarding Plaintiff's credit while the Account was reporting inaccurately.

44. On or about February 3, 2021, Plaintiff pulled his Experian, Equifax, and Trans Union reports to review the Account tradeline.

45. Upon review, Plaintiff learned that all three consumer reporting agencies were reporting the Account inaccurately despite his numerous disputes to Defendant Hyundai.

46. Defendant Trans Union was reporting the Account with a recent balance of $545 and a status of "Account 120 Days Past Due." Additionally, Trans Union included a note that stated: "Maximum Delinquency of 120 days in 06/2020 for $545 and in 10/2020 for $545."

47. Curiously, Defendant Trans Union was reporting Plaintiff's Account with an outstanding balance of $545 as of "10/2020" despite reporting an "amount paid" of $719 that same month.

48. Experian was also inaccurately reporting the Account as "past due 120 days" with an outstanding and past due balance of $545.00. Experian included a comment that stated: "early termination/balance owing."

49. Upon information and belief, Equifax inaccurately reported the Account with a past due and/or outstanding balance in or around February 2021.

50. On or about February 4, 2020, Plaintiff disputed the Account with all three consumer reporting agencies.

51. Each of Plaintiff's dispute letters included Plaintiff's full name, address, birthdate, and social security number. The letters detailed the facts surrounding Plaintiff's Lease Extension, and included copies of his lease agreement, lease extension agreement, proof of his lease return, and earlier disputes to the credit reporting agencies.

52. Upon information and belief, all three consumer reporting agencies forwarded Plaintiff's dispute to Defendant Hyundai.

53. Upon information and belief, Defendant Hyundai failed to reasonably investigate Plaintiff's dispute before responding to the credit reporting agencies.

54. On or about March 15, 2021, Equifax responded to Plaintiff's dispute. In its response, Equifax indicated that it deleted the entire tradeline associated with the Account from Plaintiff's credit file. Equifax's response did not state **why** the tradeline was deleted.

55.  Upon information and belief, Experian responded to Plaintiff's dispute in or around March 2021 and indicated that it deleted the Account from Plaintiff's credit file, too. Experian's response did not state **why** the tradeline was deleted.

56. Although Experian and Equifax ultimately deleted the Account from Plaintiff's credit reports after investigating his **disputes**, there is no indication that they attempted to update the tradeline to include the accurate Account balance and payment history.

57. On or about March 23, 2021, Defendant Trans Union responded to Plaintiff's dispute. Unlike the other two consumer reporting agencies, Defendant Trans Union did not correct or delete the Account upon receipt of Plaintiff's dispute.

58. Instead, Defendant Trans Union's response indicated that it had verified the disputed information as accurate. Accordingly, Trans Union continued to report the Account inaccurately.

59.  After allegedly "investigating" Plaintiff's dispute, Defendant Trans Union reported the Account with additional, different inaccurate information.

60. In its March 23, 2021, dispute response, Defendant Trans Union indicated that it was reporting the Account as past due and charged-off with an original Charge-off Balance of $1,635.00 and a past due, outstanding balance of $545.00. Defendant Trans Union's post-dispute reporting also included the remark "EARLY TERMINATION/BLNC OWING; UNPAID BALANCE CHARGED OFF."

61. Upon information and belief, Defendant Trans Union failed to reasonably investigate Plaintiff's dispute. Instead, Defendant Trans Union mindlessly parroted the

inaccurate information provided by the furnisher, Defendant Hyundai, without regard for the information Plaintiff provided in his dispute letter.

62. Upon information and belief, Defendant Trans Union failed to consider all relevant information when reviewing Plaintiff's dispute.

63. Upon information and belief, Trans Union, Equifax, and Experian have reason to believe that Defendant Hyundai furnishes inaccurate consumer data with some regularity.

64. Upon information and belief, Defendant Trans Union blindly relied on Defendant Hyundai's furnished information despite having reason to know it may be unreliable.

65. Upon information and belief, Defendant Trans Union does not maintain reasonable procedures to ensure it reports consumer information with maximal accuracy because it would be more expensive to independently verify the accuracy of the information provided by furnishers like Defendant Hyundai.

66. In or around June 2021, Plaintiff contacted TBI Mortgage again to inquire about the mortgage he applied for in or around January 2021.

67. After speaking with the TBI representative again, Plaintiff learned that the erroneous Account had greatly affected his credit score and credit eligibility.

68. Upon information and belief, the TBI representative told Plaintiff that his Trans Union credit score (670) qualified him for a mortgage with a 3.5% interest rate, while his other credit scores qualified him for a mortgage with a 2.99% interest rate.

69. As a direct result of Trans Union's erroneous reporting of the Account, Plaintiff qualified for a mortgage with a higher interest rate that would require him to unnecessarily

make $55,440 worth of mortgage payments over the course of 30 years.

70. On or about June 9, 2021, Plaintiff received a phone call from a collection agency. When he answered the phone call, a person named Samuel Colburn ("Mr. Colburn") indicated that he was calling from Constar Financial Services to collect on the Hyundai Account.

71. Mr. Colburn then indicated that the Hyundai Account had a collectable, outstanding balance of $1,632.00.

72. At the date of this Complaint's filing, Plaintiff has not possessed the Vehicle associated with the Account in more than two and a half years.

73. Plaintiff has repeatedly contacted Defendant Hyundai to ask for an explanation of the remaining balance, and Defendant Hyundai has not been able to justify it.

74. Naturally, Plaintiff was shocked and alarmed when he learned that Hyundai had submitted the non-existent Account balance to collections.

75. Plaintiff was also concerned because the allegedly collectable balance was significantly higher than the amount of money he understood was in dispute.

76. On or about June 22, 2021, Plaintiff received a letter from Defendant Constar dated June 10, 2021.

77. The letter restated that Defendant Constar was attempting to collect an outstanding balance of $1,635.00 from Plaintiff on behalf of Defendant Hyundai.

78. Defendant Constar's letter only further exacerbated Plaintiff's stress and frustration, as he had already told Mr. Colburn that he did not owe Defendant Hyundai any money.

79. Despite receiving notice that the debt underlying the Account was invalid or otherwise in dispute, Defendant Constar sent Plaintiff a debt collection letter.

80. Upon information and belief, Defendant Constar made no effort to verify the validity of the alleged debt after speaking with Plaintiff on June 9, 2021.

81. As a direct result of Defendants' conduct, Plaintiff has suffered actual damages including but not limited to reduced credit worthiness, less favorable credit terms, stress, anxiety, frustration, embarrassment, humiliation, and an enormous amount of wasted time.

82. Upon information and belief, the inaccurate information furnished by Defendant Hyundai provided to several third parties, including but not limited to TBI Mortgage and Kia.

## **COUNT I**
### **Defendant Hyundai's Violations of 15 U.S.C. § 1681s-2**

83. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

84. At all times pertinent hereto, Defendant Hyundai was a "person" as that term is defined by 15 U.S.C. § 168la(b) and a "furnisher of information" providing information about Plaintiff to the three major credit reporting agencies, including Defendant Trans Union.

85. Hyundai has a duty to provide accurate information to consumer reporting agencies. See 15 U.S.C. § 1681s-2(a).

86. Hyundai has a duty, upon receiving notice of a consumer's dispute, to promptly correct inaccurate information after receiving notice of a credit dispute from a consumer.

15 U.S.C. § 1681s-2(a).

87. Hyundai also has an obligation under 15 U.S.C. § 1681s-2(b) to: conduct an investigation after a consumer reporting agency notifies it that a consumer disputed the accuracy of the information it furnished; review all relevant information during its investigation of the dispute; report the results of the investigation to the relevant consumer reporting agency; and if the investigation reveals that the furnished information was incomplete or inaccurate, notify every consumer reporting agency that received the deficient information of the investigation results.

88. Any investigation that reveals the disputed information is incomplete, inaccurate, or unverifiable must be modified, deleted, or permanently blocked. 15 U.S.C. 1681 § s-2(b)(1)(E).

89. Hyundai **repeatedly** failed to follow reasonable procedures to assure maximum possible accuracy of the information it furnished to the credit reporting agencies related to Plaintiff's Account.

90. Defendant Hyundai was notified at least ten times that the information it furnished regarding the Account was inaccurate.

91. Upon information and belief, the Office of the Attorney General in Pennsylvania also notified Defendant Hyundai that Plaintiff disputed the accuracy of the information it furnished about the Account on **more than one occasion**.

92. Upon information and belief, Plaintiff spoke directly to Hyundai regarding the inaccurate Account balance no fewer than five times.

93.  Upon information and belief, Trans Union, Experian, and Equifax each forwarded Plaintiff's disputes to Defendant Hyundai in February 2021.

94. On at least **three** occasions within the past two years, by example only and without limitation, Defendant Hyundai violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes after being notified of their existence by a consumer reporting agency.

95.  Upon information and belief, Defendant Hyundai repeatedly failed to review all relevant information while investigating Plaintiff's disputes, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

96.  Upon information and belief, on or more occasions within the past two years, by example only and without limitation, Defendant Hyundai violated 15 U.S.C. §§ 1681s-2(b)(1)(C)-(D) by failing to inform all credit reporting agencies that received inaccurate information about Plaintiff of dispute investigation results.

97.  Upon information and belief, on or more occasions within the past two years, by example only and without limitation, Defendant Hyundai violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information it furnished about Plaintiff and his Account.

98.  Although Experian and Equifax ultimately deleted the Account from Plaintiff's credit reports after investigating his second set of **direct disputes**, those deletions **do not prove** that Defendant Hyundai provided accurate and complete information in response to Plaintiff's disputes.

99. Upon information and belief, those deletions indicate that the information Defendant Hyundai provided to Experian and Equifax was either incomplete or unverifiable, forcing Experian and Equifax to delete the tradeline in its entirety.

100.    Consequently, Plaintiff was deprived of the benefit the corrected Account would have had on his Equifax and Experian credit scores.

101.    Upon information and belief, had Defendant Hyundai provided accurate, complete, and verifiable information to Equifax and Experian, the Account would have remained on Plaintiff's credit reports.

102.    Upon information and belief, Plaintiff's Equifax and Experian credit scores would have benefitted from the positive payment history associated with the Account. The tradeline would have bolstered Plaintiff's credit worthiness, especially because Plaintiff regularly leases vehicles from lenders comparable to Defendant Hyundai.

103.    Upon information and belief, Hyundai's actions in the instant matter are representative of its normal policies and procedures.

104.    Upon information and belief, Hyundai's regular procedures only require it to complete a cursory review of consumer disputes, regardless of their content, magnitude, or frequency.

105.    Upon information and belief, Hyundai's procedures only require it to respond to disputes with basic consumer information without conducting a reasonable investigation of the disputed information.

106. In sum, Hyundai's conduct violated § 1681 s-2(b) of the FCRA.

107. Defendant Hyundai willfully and/or negligently violated the foregoing provisions of the FCRA in the following manner:

(a)   By willfully and/or negligently failing to conduct an investigation of the inaccurate information that the Plaintiff disputed;

(b)   By willfully and/or negligently failing to review all relevant information concerning the Plaintiffs account as provided;

(c)    By willfully and/or negligently failing to report the results of their investigation of the inaccurate information to all credit reporting agencies;

(d)   By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiffs file after conducting an investigation;

(e)   By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

(f)   By willfully and/or negligently failing to permanently block the reporting of the inaccurate information disputed by the Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiffs file to credit reporting agencies; and

(g)   By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

108. As a result of Hyundai's conduct, action, and inaction, Plaintiff suffered damages, including but not limited to: reduced credit worthiness, less favorable credit terms, emotional distress, mental anguish, humiliation, and embarrassment.

109. Additionally, Plaintiff suffered actual damages in the form of wasted time and resources, as he was repeatedly forced to re-dispute the inaccurate information by Defendant Hyundai.

110. Hyundai's violations of the FCRA were both willful and reckless, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

111. In the alternative, Hyundai's violations of the FCRA were negligent, thereby entitling Plaintiff to recover under 15 U.S.C. § 1681o.

112. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to §§1681n and 1681o.

## <u>COUNT II</u>
### Defendant Trans Union's Violations of 15 U.S.C. § 1681(e)(b)

113. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

114. The FCRA requires consumer reporting agencies, like Defendant Trans Union, to maintain reasonable procedures to ensure they compile and disburse consumer credit information with maximal accuracy. 15 U.S.C. § 1681e(b).

115. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or

to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

116. Upon information and belief, Defendant Trans Union has been sued by other consumers in the past who have alleged its dispute procedures were unreasonable and violative of the FCRA.

117. Therefore, Defendant Trans Union had actual notice of its deficient procedures.

118. In this case, however, Defendant Trans Union received actual notice that its procedures were unreasonable as applied to Plaintiff.

119. It is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, especially when the information provided by a furnisher conflicts with information the consumer reporting knows to be true.

120. Alternatively, it is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of disputed information, when it directly conflicts with the formal documentation a consumer provides alongside his dispute(s).

121. Further, it is unreasonable for Defendant Trans Union to maintain procedures that allow it to continue to report inaccurate information that has been deleted or otherwise suppressed by the other two major consumer reporting agencies, Equifax and Experian.

122. As a result of Defendant Trans Union's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered

COMPLAINT AND DEMAND FOR JURY TRIAL

damages including, but not limited to: stress, mental anguish, emotional pain, embarrassment, and wasted time.

123. Defendant's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, Defendant Trans Union is individually liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

124. Alternatively, Defendant Trans Union's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, Defendant Trans Union is individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

125. In any event, Defendant Trans Union is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## <u>COUNT III</u>
## Defendant Trans Union's Violations of 15 U.S.C. § 1681i

126. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

127. Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in their credit file is inaccurate or incomplete, the consumer reporting agency is required to: conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

128. Trans Union violated 15 U.S.C. § 1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate.

129. Trans Union violated 15 U.S.C. § 1681i(a)(1) on multiple occasions by failing to record the current status of the disputed information or delete the item from Plaintiff's credit report.

130. Upon information and belief, Defendant Trans Union violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide the furnisher, Defendant Hyundai, with all the relevant information regarding Plaintiff and his dispute.

131. Defendant Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file upon reinvestigation of Plaintiff's disputes.

132. Defendant Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's credit file upon reinvestigation of Plaintiff's disputes.

133. As a result of Trans Union's violations of 15 U.S.C. § 1681, Plaintiff suffered actual damages which have been further described above.

134. Defendant Trans Union's violations of 15 U.S.C. § 1681i were willful. Therefore, Defendant Trans Union is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

135. Alternatively, Defendant Trans Union's violations of 15 U.S.C. § 1681i were negligent. Therefore, Defendant Trans Union is individually liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. 15 U.S.C. § 1681o.

136. In any event, Defendant Trans Union is liable for Plaintiff's reasonable attorney's

fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT IV
### Defendant Hyundai's Violations of 73 Pa. Stat. § 2270.4

137. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

138. The Fair Credit Extension Uniformity Act ("FCEUA") prohibits a creditor, like Defendant Hyundai, from engaging in unfair, deceptive, and unconscionable debt collection practices. 73 Pa. Stat. § 2270.4.

139. Defendant Hyundai violated the FCEUA by sending a nonexistent debt to collections.

140. By sending a nonexistent debt to collections, Defendant Hyundai falsely, deceptively, and/or misleadingly represented the "character, amount or legal status of the debt," in violation of 73 Pa. Stat. § 2270.4(b)(5)(2).

141. The FCEAU expressly states that a creditor who has violated any provision of the Act has also violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL), 73 Pa. Stat. § 201-1.

142. Under the UTPCPL, Defendant Hyundai's violations of the FCEAU render it liable to Plaintiff for actual damages or $100, whichever is greater. 73 Pa. Stat. § 201-9.2

143. As a direct and proximate result of Defendant Hyundai's violations of the FCEAU and UTPCPL, Plaintiff has suffered actual damages, including but not limited to stress, embarrassment, shock, anxiety, emotional pain, and mental anguish.

144. If the court determines that Defendant Hyundai's violations of the FCEAU were

willful, Plaintiff is entitled to treble damages and any other relief this Court determines is proper. 73 Pa. Stat. § 201-9.2(a).

145. In any event, Defendant Hyundai is responsible for Plaintiff's reasonable attorney's fees and costs. 73 Pa. Stat. § 201-9.2

## COUNT V
### Defendant Constar's Violations of 15 U.S.C. § 1692; 73 Pa. Stat. § 2270.4

146.  Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

147. Defendant Constar attempted to collect on a debt Plaintiff allegedly owed to Hyundai.

148.  However, for the reasons detailed more thoroughly above, Plaintiff did not owe any money to Hyundai.

149.  As part of its collection efforts, Defendant Constar falsely alleged that Plaintiff's Hyundai Account had an outstanding balance, even though no such debt existed.

150.  The FDCPA prohibits debt collectors, like Defendant Constar, from using unfair and deceptive debt collection practices.

151.  Any and all of Defendant Constar's efforts to collect on the Account were deceptive and unfair, as Plaintiff does not owe Hyundai any money.

152. Defendant Constar's collection efforts violated 15 U.S.C. § 1692e(2)(A), which provides that a debt collector may not make a false representation of the "character, amount, or legal statue of any debt."

153. Defendant Constar's collection efforts violated 15 U.S.C. § 1692e(10), which

COMPLAINT AND DEMAND FOR JURY TRIAL

provides that a debt collector may not use "any false representation or deceptive mans to collect or attempt to collect any debt."

154. Furthermore, Defendant Constar's collection efforts violated 15 U.S.C. § 1692f, which provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Defendant Constar violated 15 U.S.C. § 1692f by intentionally attempting to collect on Plaintiff's alleged consumer debt when Constar knew or should have known that the debt was nonexistent or otherwise invalid.

155. Defendant Constar's violations of the FDCPA constitute "unfair or deceptive debt collection practices" that also violate the FCEUA. 73 Pa. Stat. § 2270.4(a).

156. The FCEAU expressly states that a debt collector who has violated any provision of the Act has also violated the UTPCPL. 73 Pa. Stat. § 2270.5.

157. Under the UTPCPL, Defendant Constar's violations of the FCEAU render it liable to Plaintiff for actual damages or $100, whichever is greater. 73 Pa. Stat. § 201-9.2

158. If the court determines that Defendant Constar's violations of the FCEAU were willful, Plaintiff is entitled to treble damages and any other relief this Court determines is proper. 73 Pa. Stat. § 201-9.2(a).

159. As a direct and proximate result of Constar's violations of the FDCPA, FCEAU, and UTPCPL, Plaintiff has suffered statutory and actual damages, including but not limited to stress, embarrassment, shock, anxiety, emotional pain, and mental anguish.

160. Consequently, the Plaintiff seeks actual damages, statutory damages, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k and 73 Pa. Stat. § 201-9.2.

## TRIAL BY JURY

161. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Scott Weschler, respectfully requests judgment be entered against Defendants, for the following:

A.  Actual damages pursuant to 15 U.S.C. §§ 1681o, 1681n;

B.  Actual damages pursuant to 15 U.S.C. § 1692k and 73 Pa. Stat. § 201-9.2;

C.  Statutory damages pursuant to 15 U.S.C. §§ 1681o, 1681n;

D.  Statutory damages pursuant to 15 U.S.C. § 1692k and 73 Pa. Stat. § 201-9.2;

E.  Punitive damages pursuant to 15 U.S.C. § 1681n;

F.  Treble damages pursuant to 73 Pa. Stat. § 201-9.2;

G.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o, 1681n; 15 U.S.C. § 1692k; and 73 Pa. Stat. § 201-9.2; and

H.  All pre-judgment and post-judgment interest as may be allowed under the law; and

I.  Any other and further relief as the Court may deem just and proper.

Dated:  July 12, 2021

By:/s/ *Ari H. Marcus*
Ari H. Marcus, Esq., PA Bar No. 322283
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
T: (732) 695-3282
F: (732) 298-6256
E: ari@marcuszelman.com
*Attorneys for Plaintiff Scott Wechsler*