IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT WECHSLER,<br><br>    *Plaintiff,*<br><br>  v.<br><br>TRANS UNION, LLC,<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 21-3085 |

**PAPPERT, J.**                               April 20, 2022

<u>MEMORANDUM</u>

  Scott Wechsler claims Trans Union, LLC, violated the Fair Credit Reporting Act when it included a debt he did not owe on his credit report, and again when it erroneously increased the amount of the purported debt after he filed a dispute. Trans Union moves for judgment on the pleadings, claiming there was no inaccuracy in its reports, and that even if there had been, Wechsler fails to state a claim because credit reporting agencies are not required to adjudicate disputes about the legal validity of debts. The Court denies its Motion.

I

  On September 21, 2015, Scott Wechsler signed a three-year lease agreement for a Hyundai Genesis. (Compl. ¶¶ 13–14, ECF 1.) The lease required him pay Hyundai $545 on the twenty-first of each month. (*Id.* ¶ 14; Closed End Motor Vehicle Lease, ECF 14-2.) After the original lease expired, Wechsler and Hyundai agreed to a month-to-month extension that allowed Wechsler to keep the car for up to six additional months. (*Id.* at 15–17.) Under the agreement, Wechsler would continue to pay $545, "due in advance on the 21[st] day of each month that you keep the above-identified

vehicle ('Vehicle') after the payment due date." (Lease Extension Agreement ¶ 1, ECF 14-3.) On December 21, 2018, Wechsler terminated the lease by returning his car to Hyundai. (Compl. ¶¶ 16–20.)

More than a year later, Hyundai sent Wechsler a statement claiming he owed $1,264.40. (*Id.* ¶¶ 20–21.) According to the statement, Wechsler owed $545 in "due and unpaid lease payments." (*Id.* ¶ 20.) The rest of the bill was for excess wear, fees and taxes. (*Id.*) Wechsler paid Hyundai $719.40, but did not remit the "unpaid lease payment" because he believed he had made all of the payments he owed under the lease. (*Id.* ¶¶ 20–21.)

After Wechsler received a second letter claiming he owed $545 in lease payments, he contacted Hyundai. A representative told him that according to Hyundai's records, Wechsler returned the vehicle in January 2019. (*Id.* ¶ 21–22.) When Wechsler provided Hyundai with documentation proving he had returned the car on December 21, 2018, the representative told him he had returned the vehicle one day late, requiring an additional monthly payment. (*Id.* ¶¶ 26–27.)

In September 2020, Wechsler learned the major credit reporting agencies, including Trans Union, were reporting a past due balance on his Hyundai account. (*Id.* ¶ 30.) Wechsler tried to resolve with issue with Hyundai, which insisted without explanation that he still owed $545. (*Id.* ¶ 34.) Finally, he filed a complaint with Pennsylvania's Bureau of Consumer Protection. (*Id.* ¶ 36–37.) In its response to the complaint, Hyundai asserted that Wechsler had not returned the car until January 1, 2019. (*Id.* ¶ 38.)

Wechsler disputed the Hyundai account with all three credit reporting agencies. (*Id.* ¶ 50.) He explained the facts regarding his disagreement with Hyundai and provided copies of his lease agreement, lease extension and proof of his lease return. (*Id.* ¶ 51.) Equifax and Experian, the other major reporting agencies, deleted the account from Wechsler's credit file. (*Id.* ¶¶ 54–55.)

Trans Union did not. (*Id.* ¶ 57.) Instead, it claimed it had verified the disputed information and added new, inaccurate information about the account. (*Id.* ¶¶ 58–59.) In addition to the past due balance of $545, it indicated that a Hyundai had "charged off" a balance of $1,635. (*Id.* ¶ 60.) Later, Wechsler began receiving calls and letters from Constar Financial Services attempting to collect the $1,635 he purportedly owed Hyundai. (*Id.* ¶¶ 70–71, 75–76.)

Wechsler sued Hyundai Capital America, Constar Financial Services, and Trans Union, alleging violations of the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, Pennsylvania's Fair Credit Extension Uniformity Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law. Wechsler later dismissed his claims against Hyundai and Constar. (Notices of Voluntary Dismissal, ECFs 9 and 10.) All that remains are his claims that Trans Union violated the "reasonable procedures" and "reinvestigation" provisions of the Fair Credit Reporting Act. *See* (Compl. ¶¶ 113–134); 15 U.S.C. §§ 1681e(b), 1681i.

## II

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Courts will grant a judgment on the pleadings "only if, viewing all the facts in the light most favorable to

the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). In other words, a district court applies the same standard to a judgment on the pleadings as it does to a motion to dismiss pursuant to Rule 12(b)(6). *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

To survive dismissal under Federal Rule of Civil Procedure Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016)

(internal quotation marks and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). An exception exists, however, for documents that are "integral to or explicitly relied upon in the complaint." *Id.* at 249 (emphasis deleted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Accordingly, the Court can consider documents attached to a motion to dismiss if they are "undisputedly authentic" and "the plaintiff's claims are based on them." *Est. of Roman v. City of Newark*, 914 F.3d 789, 796 (3d Cir. 2019) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). The same principles apply to motions for judgment on the pleadings. *See Mele v. Fed. Rsrv. Bank of New York*, 359 F.3d 251, 256 n.5 (3d Cir. 2004).

III

Congress enacted the Fair Credit Reporting Act "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)). Agencies must use "reasonable procedures to assure maximum possible accuracy" of the information in the reports they create. 15 U.S.C. § 1681e(b). Then, if a consumer disputes information in his or her file, the agency must "conduct a reasonable reinvestigation to determine

whether the disputed information is inaccurate" and, if appropriate, update the file or delete the disputed item.  § 1681i(a)(1)(A), (5)(A).

To state a "reasonable procedures" claim under § 1681e(b), Wechsler must allege "(1) inaccurate information was included on his report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury was caused by the inclusion of inaccurate information." *Cortez*, 617 F.3d at 708 (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).  Similarly, to adequately plead a "reinvestigation" claim under § 1681i(a)(1)(A), Wechsler must show the credit reporting agency had a duty to conduct a reasonable reinvestigation, and that "it would have discovered a discrepancy" had it done so.  *Id.* at 713.

IV

Trans Union contends it is entitled to judgment on both of Wechsler's claims for two interrelated reasons.  First, it claims the information it provided was accurate: Wechsler actually owed Hyundai an additional monthly payment because he kept the car until December 21, 2018.  Second, even if Wechsler did not owe Hyundai for an additional month under the terms of his lease, Trans Union had no responsibility to investigate the legal validity of disputed debt.

A

Trans Union's first argument is unconvincing.  Wechsler was only responsible for the next month's payment if he kept the vehicle after the twenty-first of the month. Monthly payments were "due in advance on the 21[st] day of each month that you keep the above-identified vehicle . . . after the payment due date." (Lease Extension

Agreement ¶ 1.) The payment was "due" on the twenty-first, but only if Wechsler kept the car "after" the twenty-first. (*Id.*)

This interpretation—compelled by the language of the relevant provision—is consistent with the rest of the agreement. For example, paragraph two sets out the method for calculating excess mileage for "each month after the Original Maturity Date that you keep the Vehicle *beyond* the payment due date." (*Id.* ¶ 2 (emphasis added).) The formula only makes sense if "payment due date" refers to the twenty-first of each successive month. A new mileage limit—like the monthly lease payment—only applies if the car is kept "beyond" that date. Wechsler was not responsible for the additional monthly payment that appeared on his credit report if, as he alleges, he returned the car on the twenty-first of December.

Trans Union's contends that the "payment due date" referenced in the agreement is the twenty-first of the *previous* month. *See* (Mem. Supp. Mot. J. Pleadings at 2, ECF 14-1). On its read, Wechsler had to pay for an additional month (December 21 to January 21) on the twenty-first day of the month (December) following his last payment (in November). (*Id.*) That reading is unsupported by grammar or logic.

The extension agreement explains that payments are due in advance on the twenty-first day "of each month . . . that you keep the . . . vehicle . . . after the payment due date." Grammatically, the "month" in which payment is due must be the same one in which "you keep the vehicle after the payment due date," not the following month. And if Trans Union were right, Wechsler would have to make lease payments for months in which he could not use the car without incurring a fee for the subsequent

7

month, whether he wanted to keep the car for another month or not. By using the car in December, the "month . . . that [he kept] the vehicle . . . after the [November] payment due date," he would have had to make the monthly payment for December 21 to January 21, even though he would have to surrender the car before January to avoid paying for January 21 through February 21 as well. That would make no sense, and it is not what the agreement requires.

B

Trans Union's second argument fares no better. It attempts to characterize Wechsler's claim as "an impermissible collateral attack against the legal validity of the underlying debt." (Mem. Supp. Mot. J. Pleadings at 6). But reading the Complaint in the light most favorable to Wechsler, the alleged inaccuracy—that no debt existed because he returned the car on time—involves a disputed factual question, not a legal one.

The text of the Fair Credit Reporting Act does not distinguish between "legal" and "factual" attacks on the accuracy of information included in consumer credit reports. It simply requires credit reporting agencies to follow "reasonable procedures" to ensure the accuracy of their reports and to conduct "a reasonable reinvestigation" into the accuracy of disputed information. 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A). Nevertheless, many courts have held that credit reporting agencies are not required "to resolve legal disputes about the validity of the underlying debts they report." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015). Because credit reporting agencies are "ill equipped to adjudicate contract disputes," their procedures and investigations are not unreasonable simply because they stop short of resolving

legal questions about a reported debt's validity. *Berkery v. Equifax Info. Servs. LLC*, No. 18-3417, 2019 WL 1958567, at *4 (E.D. Pa. May 2, 2019) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010)). Put another way, legal disputes are simply not the kind of "factual deficiency that [can be] resolved by a reasonable reinvestigation conducted by the credit bureau." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008).

1

The Third Circuit Court of Appeals has not held that a consumer can never challenge the legal validity of the underlying debt in a Fair Credit Reporting Act case against a credit reporting agency. Even if it were to do so, Wechsler's claims would not be barred. Consumers may bring claims premised on factual challenges to reported debts, even if they cannot expect credit reporting agencies to resolve legal questions about their validity.

The divergent outcomes in *Cushman* v. *Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997), and *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008), illustrate the distinction between claims that implicate legal disputes, which are not actionable, and those that turn on factual inquiries, which are. In *DeAndrade*, the plaintiff sued Trans Union after it refused to remove a negative item related to a mortgage he alleged was fraudulently obtained. 523 F.3d at 64. The First Circuit affirmed a grant of summary judgment for Trans Union, concluding that DeAndrade had mounted "an impermissible collateral attack against the lender." *Id.* at 68. *Cushman* also involved a plaintiff who challenged items on her credit report regarding debt from credit cards she alleged were fraudulently obtained. 115 F.3d at 222. But unlike the First Circuit in *DeAndrade*, the

Third Circuit reversed the district court's judgment as a matter of law for Trans Union on Cushman's reinvestigation. *Id.* at 227.  It reasoned that the jury "could have concluded that after [Trans Union] was alerted to the accusation that the accounts were obtained fraudulently, and then confronted with the credit grantors' reiteration of the inaccurate information, [it] should have known that the credit grantors were "unreliable" to the extent that they had not been informed of the fraud." *Id.* at 226 (3d Cir. 1997).  The Court reversed despite the fact that Cushman had not disputed the delinquencies with the credit grantors until *after* the initiation of her lawsuit against Trans Union.  *Id.* at 222.  Cushman's reinvestigation claim was a collateral attack on the validity of the credit card debt, but not an "impermissible" one.

In *DeAndrade*, the validity of the debt depended on the outcome of a legal dispute: whether the plaintiff's mortgage was valid "turn[ed] on questions that can only be resolved by a court of law, such as whether [the plaintiff] ratified the loan." 523 F.3d at 68.  In *Cushman*, by contrast, the issue was factual.  Cushman's challenge to the disputed credit card debt could have been—and ultimately was—resolved by comparing her handwriting to the signatures on the fraudulent applications. *Cushman*, 115 F.3d at 222.

*Cushman* shows that a Fair Credit Reporting Act claim against a credit reporting agency is not barred simply because the alleged inaccuracy involves an unresolved dispute about the underlying debt.  Instead, to the extent it applies, the prohibition on collateral attacks bars only challenges to the validity of a debt that "turn[] on questions that can only be resolved by a court of law." *DeAndrade*, 523 F.3d at 68 (1st Cir. 2008).  The question is not whether the plaintiff alleges he does not owe

the debt, but why. *Hopkins v. I.C. Sys., Inc.*, No. 18-2063, 2020 WL 2557134, at *8 (E.D. Pa. May 20, 2020). Where the dispute is a factual one "that could have been resolved by a reasonable reinvestigation," it has not "crossed the line between alleging a factual deficiency . . . and launching an impermissible collateral attack." *DeAndrade*, 523 F.3d at 68.

2

Viewing the Complaint in the light most favorable to the plaintiff, Wechsler plausibly alleges that his credit report was inaccurate because of a factual dispute that could have been resolved through a reasonable investigation. While Trans Union attempts to cast the disagreement between Wechsler and Hyundai as one of contract interpretation, the Complaint suggests the real issue was record keeping. According to Wechsler, Hyundai repeatedly defended its attempts to collect an additional monthly payment on the ground that Wechsler did not return his car until January 2019. (Compl. ¶¶ 25, 38–39.) When Wechsler returned the car is a factual dispute, not a legal one.

Wechsler does say that when confronted with proof he returned the car on December 21, a Hyundai representative told him he had "returned the vehicle one day late." (Compl. ¶ 27.) This lends credence to Trans Union's allegation that Wechsler and Hyundai disagreed about the terms of the lease extension agreement. But later in the Complaint, Wechsler points out that this remark conflicted with Hyundai's other, more frequently asserted, explanation. (Compl. ¶ 39.) Both before and after taking the position Wechsler returned the car one day late, Hyundai maintained, including it its letter to the Pennsylvania Attorney General, that Wechsler had not returned the car

11

until January. (Compl. ¶¶ 25, 38–39.) Moreover, Wechsler alleges that the representative who said the car had been returned "one day late" was referring to December 22, not December 21. (*Id.* ¶ 39.) Taken as a whole, it is clear Wechsler believes—and has alleged—that his dispute with Hyundai was a factual one.

An investigation into when Wechsler returned his car differs from the legal issues presented in *DeAndrade* and other collateral attack cases. In *DeAndrade*, for example, the creditor "did in fact have documentation granting it a mortgage on the residence [of the plaintiff] who was in fact the same [person] that had been making the loan payments." *Id.* at 68. The legal question was whether the plaintiff was "entitled to stop making those payments" or had instead ratified the mortgage through his conduct. *Id.*

Similarly, in *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020), the plaintiffs conceded they took out loans from payday lenders associated with Native American tribes, but claimed their credit reports were inaccurate because the debts were legally invalid. *Id.* at 292–293. Resolving the dispute would require the defendant "settle legal issues involving choice-of-law clauses, state usury laws, and sovereign immunity doctrines." *Id.* at 297. And in *Carvalho*, the plaintiff admitted she owed the amount listed on her credit report, but claimed she was not legally obligated to pay it until the creditor billed her insurer. 629 F.3d at 891.

Those disputes involved disagreements between plaintiff and creditor about the legal significance of their agreements or conduct. The plaintiffs admitted they incurred the debts, but believed for one reason or another that they were not enforceable. No factual investigation could answer those questions. By contrast, Wechsler maintains no

12

debt ever existed, and the truth of his assertion depends on a simple fact: when he returned his car. It is plausible additional inquiry could have answered that question.

If discovery suggests Hyundai told Trans Union it was entitled to an additional monthly payment despite Wechsler returning the car on December 21, there may have been a legal dispute that relieved Trans Union of its obligation to conduct further investigations regarding the $545 Hyundai claimed Wechsler owed. But the Court cannot assume Hyundai relied on the implausible lease interpretation Trans Union advances in its Motion. Trans Union's ability to invent a reading of the lease extension that, if accepted, would render its report accurate does not compel the conclusion that Wechsler's disagreement with Hyundai was legal. Otherwise, credit reporting agencies could thwart viable FCRA claims by burying real factual disputes under imagined legal issues. *See Hopkins*, 2020 WL 2557134, at *8 (refusing to permit a furnisher to use "a labyrinth of hypotheticals . . . to turn a relatively straight-forward factual matter into an elaborate legal one.").

V

Even if Trans Union was not obligated to consider whether Wechsler owed Hyundai an additional monthly payment under the terms of his lease, it would still not be entitled to judgment on Wechsler's reasonable procedures claim because Trans Union's response to Wechsler's dispute produced additional factual inaccuracies. Those inaccuracies are independently actionable under § 1681e(b).

Wechsler alleges he paid most of the bill Hyundai sent him in January of 2020, and that afterwards only the $545 monthly lease payment remained in dispute. (Compl. ¶¶ 20–23.) Yet after he disputed the $545 past due balance on his Hyundai

13

account, Trans Union indicated it had verified the disputed information *and* that Hyundai had "charged off" $ 1,635 in debt that Wechsler owed it. (*Id.* ¶¶ 58–60.) It is reasonable to infer that this "charged-off" debt was related to the $1,264 Wechsler was originally billed; he knew of no other potential debt to Hyundai. (*Id.* ¶¶ 20–23; 74–75.) To "charge off" an account means to treat it "as a loss or expense because payment is unlikely; to treat [it] as a bad debt." *Charge Off*, *Black's Law Dictionary* (11th ed. 2019). But according to Wechsler's Complaint, at most he owed Hyundai $545—he had already made the other payments Hyundai requested. And the information Trans Union reported was inconsistent with its previous reports, which indicated Wechsler had paid $719 of his debt to Hyundai and owed only $545. (*Id.* ¶¶ 46–47, 54–55.)

Wechsler plausibly alleges Trans Union did not employ reasonable procedures when it added inaccurate information about his debt to Hyundai after he disputed that the debt existed at all. *See* Cortez, 617 F.3d at 710; *Philbin v. Trans Union Corp.*, 101 F.3d 957, 965 (3d Cir. 1996). At that point, Wechsler had already provided Trans Union with "the facts surrounding [his] lease extension" and supporting documents to demonstrate he owed Hyundai nothing. (Compl. ¶ 51.) And, at this juncture, the purported inconsistencies between Trans Union's original and updated reporting regarding the debt add plausibility to his claim that its procedures were unreasonable. *Cortez*, 617 F.3d at 709.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.